Filed 6/25/25; certified for publication 7/8/25 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>BROOKLYN BROADWAY,<br><br>    Real Party in Interest. | D085508<br><br><br><br><br>(Super. Ct. No. SCD301391) |
| THE PEOPLE,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>ANA VILLANUEVA,<br><br>    Real Party in Interest. | D085509<br><br><br><br><br>(Super. Ct. Nos. SCS328569, SCD295417, SCN436065) |

ORIGINAL PROCEEDINGS on petitions for writ of mandate. Cynthia Davis, Judge. Petitions granted.

Summer Stephan, District Attorney, Linh Lam, Valerie M. Ryan, and Emmaline Campbell, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Law Office of Brandon S. Naidu and Brandon S. Naidu, for Real Party in Interest, Brooklyn Broadway.

Jo E. Super, Chief Deputy Primary Public Defender, Jeremy Kennedy Thornton and Troy Britt, Deputy Public Defenders, for Real Party in Interest, Ana Villanueva.

In two similarly situated criminal cases the People petitioned this court for writs of mandate directing the trial court to grant their peremptory challenges to the Honorable Judge Cynthia Davis under Code of Civil Procedure section 170.6.[1] This court issued orders to show case in each case and consolidated the petitions.

Judge Davis is currently the sole judge assigned to the San Diego County Behavioral Health Court (BHC), a collaborative court that provides an avenue for defendants suffering from serious mental illness to receive court supervised treatment under formal supervised probation. In the cases at hand, the trial judges referred real parties in interest Brooklyn Broadway and Ana Villanueva to BHC for admission screening over the People's objection, after Broadway pled guilty to two serious felony charges, and a jury convicted Villanueva of three felony charges. The People filed their section 170.6 peremptory challenges against Judge Davis immediately upon the

---

1    Further unspecified statutory references are to the Code of Civil Procedure.

2

referrals. Judge Davis denied the challenges, based on a conclusion that proceedings in BHC are not hearings involving contested issues of fact or law. As discussed *post*, we disagree with this conclusion. Accordingly, we issue writs directing the trial court to grant the People's peremptory challenges.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Originally launched in 2009, BHC is a collaborative court that combines evidence-based practices, treatment, and rehabilitative services with intensive judicial supervision to provide services to defendants who are suffering from serious mental illness. The program operates on a team approach, with a team that includes a judicial officer, a public defender, a district attorney, a city attorney, probation officers specifically assigned to the program, mental health treatment professionals under contract to the program, mental health clinicians from the public defender's office, a court analyst, and a representative from the county Behavioral Health Services.

Unlike other diversion programs, such as pretrial diversion for defendants with mental health disorders (section 1001.36), BHC was not created by statutory mandate, but rather through a joint agreement of the various involved parties to address mental health issues for certain qualifying individuals involved in the criminal justice system. As a result, BHC has no governing statutes.

Defendants are identified as potential participants in BHC through a referral system. Upon request by a party, and after the defendant is convicted or enters a plea, but before sentencing, a trial court may elect to refer a defendant to BHC for admission screening. In some cases, the trial court makes the referral based on an agreement with the prosecutor, i.e., as a term of a plea agreement, but in the absence of a plea agreement, the trial court may make the referral to BHC over the objection of the prosecutor.

3

At the first BHC appearance, the defendant signs a BHC referral form and an authorization for a release of medical records and information. The defendant then meets with a mental health clinician, who prepares a screening report. Prior to the defendant's second appearance at BHC, the entire team reviews the report and discusses the defendant's suitability for the program. This discussion is off the record, given that it necessarily includes details of the defendant's mental health records. Although the team is tasked with determining[2] whether a defendant is suitable for admission by unanimous decision, that does not always occur. If there is disagreement, the BHC judge makes the ultimate decision as to admission. In at least some instances, Judge Davis has admitted defendants into BHC over the objections of one or more members of the team.

If the defendant is accepted into BHC, in open court, the BHC judge issues an order granting them formal supervised probation.[3] While on probation, the defendant receives services, such as stable housing, counseling/psychiatric care, and medication, when warranted. The defendant must complete four performance-based phases over a minimum period of 18 months. During this time, the defendant has regular meetings with a multi-disciplinary team and frequent court appearances in BHC to ensure compliance.

---

[2] The declarations submitted by the People in support of their petition reference various written materials describing the BHC program, but none are included in the record, and the People note that there is no formal written agreement governing BHC.

[3] If a defendant is not accepted into BHC, the BHC judge refers them back to the original sentencing court.

If the defendant violates the terms of the probation, the BHC judge holds a probation violation hearing, during which the court may modify the terms of probation or impose other consequences. If the defendant is unable to comply with the terms of probation, or otherwise to complete the BHC program, the BHC judge may revoke their probation and refer them back to the original sentencing judge for imposition of sentence. If the defendant successfully completes the program, the court will terminate their probation and may, in some cases, reduce or expunge the underlying criminal convictions.

Throughout its history, BHC has had only one assigned judge at any given time. The Honorable Robert J. Trentacosta was assigned to BHC from 2012 to 2014, followed by the Honorable Polly H. Shamoon. Judge Davis has been the sole judge assigned to BHC since 2019.

In the first case at issue here, Brooklyn Broadway pled guilty to gross vehicular manslaughter (Pen. Code,§ 192, subd. (c)(l)) and hit-and-run causing death (Veh. Code,§ 20001, subd. (b)(2)), based on an incident in which she fled the scene after throwing her former landlord from the hood of a vehicle. The People made no offers and took no part in the plea. After accepting the plea, the trial court judge referred Broadway to BHC for screening, over the People's objection.

In the second case, a jury convicted Ana Villanueva of assault with a deadly weapon, willful cruelty to an elder, and robbery, following an incident in which Villanueva thrust a knife at her father and stole his car keys, while she was on felony probation in two other matters. The trial court judge referred Villanueva to BHC for screening, over the People's objection, at the sentencing hearing in January 2025.

5

The People immediately filed peremptory challenges to Judge Davis under section 170.6.[4]  After hearing argument, Judge Davis denied each of the People's peremptory challenges.  Judge Davis attached nearly identical written orders detailing each of her decisions.  She explained that the question before her was whether the peremptory challenge was "proper and timely," and more specifically "whether [BHC] screenings, acceptance into programming and program reviews are hearings involving contested issues of fact or law."  Judge Davis concluded they are not and denied both challenges.

The People filed petitions for writ of mandate, and this court issued orders to show cause why the relief requested should not be granted as to the People's section 170.6 peremptory challenges.

## II.    DISCUSSION

The People contend that their peremptory challenge was timely and in appropriate form, and that Judge Davis had no discretion to deny it. Broadway and Villanueva assert Judge Davis correctly denied their challenges because the plain language of section 170.6, subdivision (a)(1) limits peremptory challenges to situations in which there is a pending trial or hearing that involves a contested issue of law or fact, and, as Judge Davis concluded, the screening and acceptance process is not a trial or a hearing involving contested issues of law or fact.

### A.    Peremptory Challenges Under Section 170.6

Section 170.6, subdivision (a)(1) states, "A judge, court commissioner, or referee of a superior court of the State of California shall not try a civil or criminal action or special proceeding of any kind or character nor hear any

---

[4]    The People also sought disqualification under section 170.1, but this court's order to show cause is limited to the court's denial of the section 170.6 challenge.

6

matter therein that involves a contested issue of law or fact when it is established as provided in this section that the judge or court commissioner is prejudiced against a party or attorney or the interest of a party or attorney appearing in the action or proceeding."

Prejudice is established, for purposes of section 170.6, by a motion "supported by an affidavit or declaration under penalty of perjury, or an oral statement under oath' that the assigned judge 'is prejudiced against a party or attorney . . . so that the party or attorney cannot, or believes that he or she cannot, have a fair and impartial trial or hearing before the judge." (§ 170.6, subd. (a)(2).)

"So long as the 'motion is duly presented, and the affidavit or declaration under penalty of perjury is duly filed or an oral statement under oath is duly made, thereupon and without any further act or proof,' a different judge must be assigned to try the cause or hear the matter. (§ 170.6, subd. (a)(4).)" (*Maas v. Superior Court* (2016) 1 Cal.5th 962, 972 (*Maas*).) "When a litigant has met the requirements of section 170.6, disqualification of the judge is mandatory, without any requirement of proof of facts showing that the judge is *actually* prejudiced." (*Maas,* at p. 972.) The disqualification is automatic and based solely on the party's asserted good faith belief that there is prejudice. (*Ibid*.)

The purpose of permitting such a broad right based solely on the party's asserted belief is to " 'preserve public confidence in the impartiality of the courts.' " (*Maas, supra,* 1 Cal.5th at p. 973; accord *Hemingway v. Superior Court* (2004) 122 Cal.App.4th 1148, 1158 ["The right to exercise a peremptory challenge under section 170.6 is a substantial right and an important part of California's system of due process that promotes fair and impartial trials and confidence in the judiciary."].) Accordingly, section 170.6

7

" 'is to be liberally construed in favor of allowing a peremptory challenge, and a challenge should be denied only if the statute absolutely forbids it.' " (*Maas,* at p. 973.)

Given the broad nature of the right conferred, "[w]hen considering the enactment of section 170.6, the Legislature was well aware of the potential that its provisions 'may be abused by parties seeking to delay trial or to obtain a favorable judge.' " (*Maas, supra,* 1 Cal.5th at p. 973.) To protect against such abuses, "the statute restricts both the number and the timing of a peremptory challenge against a judge." (*Ibid*.; see also § 170.6, subd. (2).)

"As a general rule, a challenge of a judge is permitted under section 170.6 any time before the commencement of a trial or hearing." (*People v. Superior Court (Lavi)* (1993) 4 Cal.4th 1164, 1171 (*Lavi*); see also *Grant v. Superior Court* (2001) 90 Cal.App.4th 518, 524 (*Grant*).) However, because section 170.6 is intended to " 'safeguard the right to a *fair trial or hearing,*' " it does not "permit a peremptory challenge to be filed or accepted absent a pending trial, a pending hearing involving a contested issue of fact or law, or an all purpose assignment." (*Grant,* at p. 526.) Thus, the moving party generally must file the peremptory challenge soon after a trial or hearing becomes pending, or an all-purpose assignment is made, but *before* the judge presides over any hearing involving contested issue of law or fact within the meaning of section 170.6.

Because the trial court has no discretion to deny a section 170.6 peremptory challenge that complies with the statutory requirements, we review the trial court's decision to grant or deny the challenge de novo, as a question of law. (*Prescription Opioid Cases* (2020) 57 Cal.App.5th 1039, 1046.)

## B.    Analysis

Broadway and Villanueva do not take issue with the form of the People's peremptory challenge.  They assert only that the challenges were properly denied because there was not a pending trial or hearing, within the meaning of section 170.6.  The question we must address, then, is whether BHC proceedings constitute a pending trial or hearing involving questions of fact or law (or, alternatively, an all-purpose assignment).  As we explain, we conclude that they do.

As explained in *Maas*, "the statutory terms 'try' and 'hear' do not apply exclusively to trials and hearings." (*Maas*, *supra*, 1 Cal.5th at p. 977.)  "[T]o try also means to 'examine judicially' . . . and . . . is often used interchangeably with the term 'to decide.' " (*Ibid*.)  Further, "the term 'heard' . . . does not contemplate the requirement that the court conduct an oral hearing, only that the court consider and evaluate the petition [or other relevant pleading] before granting relief." (*Ibid*.)

Courts have defined the term " 'hearing' within the meaning of section 170.6 . . . as 'a hearing wherein the court is called upon to *rule* upon some disputed issue of law or fact based upon legal argument or evidence or both before the court.' " (*Grant, supra,* 90 Cal.App.4th at p. 526.)  The definition typically excludes certain proceedings, for example, settlement conferences and case management conferences, because the judge is not called upon to rule on any contested issues of fact or law in those types of proceedings. (*Ibid*.)  However, "when a law and motion matter requires determination of a contested issue of law or fact, a peremptory challenge may be filed to disqualify the judge from hearing the motion." (*Ibid*.)

Because BHC is a collaborative court, created through the joint intention of the various involved parties, it does not fit neatly into the

9

common examples discussed by other courts in defining what constitutes a trial or hearing for purposes of section 170.6. However, courts have addressed several analogous situations, and we find their analyses instructive here.

For example, as mentioned, courts have concluded that settlement conferences and case management conferences generally are not considered "hearings" within the meaning of section 170.6. (*Grant, supra,* 90 Cal.App.4th at p. 526.) The reason is apparent in the case of a settlement conference: the court has no authority to *order* a settlement, or to otherwise make a ruling that resolves disputed issues of fact or law. The court will only make an order on the settlement *if the parties agree.* Likewise, the purpose of a case management conference is to discuss the scope, timeline, and any potential issues that may arise in a collaborative fashion at the outset of the case. (See Cal. Rules of Court, rules 3.720–3.735.) While contested issues may arise in this context, if they rise to the level of a law and motion matter, the judge then becomes subject to a section 170.6 peremptory challenge. (*Grant,* at p. 526.)

The BHC screening and admittance process is similar to a settlement conference or case management conference to the extent that it is, ideally, a collaborative process, but there is a key distinction: in the BHC context, the BHC judge will *always* make the final decision as to whether to admit the

10

defendant.[5] In the written decision denying the People's section 170.6 peremptory challenge in this case, Judge Davis explains that although the entire team discusses whether the defendant should be accepted, "[a]t the end of the discussion, a determination is made *by the court* as to whether to accept the individual into the program." This may occur with the support of the full team, in which case the decision could be viewed as "uncontested"; but when one or more of the relevant stakeholders are not in agreement, the final decision is necessarily "contested." Since BHC is not governed by statutory law, the decision cannot be characterized as an issue of law; however, the trial court must consider whether the defendant meets the agreed upon eligibility and suitability criteria for admission, and, in that sense, the court's decision is fairly characterized as deciding a contested issue of fact. (*See e.g. Maas, supra*, 1 Cal.5th at p. 977 [to "try" is to "examine judicially" and to "decide," and a hearing requires the court to consider and evaluate the request before granting relief].)

Broadway and Villanueva dispute that the screening and acceptance process involves a determination on contested issues of fact or law related to the merits of the case. They argue the process is collaborative and note that

---

[5] The People assert that, as initially designed, defendants were referred to BHC solely through negotiated plea agreements. In that sense, at least the initial referral was necessarily collaborative and uncontested. It is not evident how or when the BHC referral process evolved, but it is apparent from the cases before us that trial courts are now referring defendants to BHC without the People's agreement, and thus, at least in these cases, the collaborative nature of BHC has been reduced, if not eliminated. Moreover, we note, as was evident at oral argument, that the lack of governing statute or agreement defining when and under what conditions a trial court can refer a defendant to BHC, if not by agreement, impedes a complete understanding of the extent to which the current referral process remains collaborative.

11

the "discussion" about whether the defendant should be admitted is informal and held off the record. But neither of these factors is relevant to the determination of whether the judge is ultimately resolving a contested issue of fact. Rather, the discussion is off the record precisely because it often involves factual details related to the defendant's history of mental health issues and potential susceptibility to treatment.[6] As noted in *Maas*, section 170.6 "does not contemplate the requirement that the court conduct an oral hearing, only that the court consider and evaluate the petition before granting relief." (*Maas, supra*, 1 Cal.5th at p. 977.)

Further, although BHC is described as "collaborative," it is not the case that the screening and acceptance proceedings are never contested. Notably, in this case, the People objected to the trial court's referral of both Broadway and Villanueva to BHC for consideration in the first instance, and thus it follows that they would oppose both their screening for and acceptance into BHC. While it is conceivable that after review and discussion, the entire team (including even defense counsel) might agree that a defendant is *not* an appropriate fit for the program, that agreement would not be apparent until the conclusion of the discussion. Regardless, here, given the section 170.6 challenges, it is apparent that the decision to screen or admit either Broadway or Villanueva would be contested by at least one member of the team, and therefore the BHC judge would be called upon to make the final determination as to their admission to BHC.

---

[6] To the extent Villanueva attempts to distinguish this case from *Lyons v. Superior Court* (1977) 73 Cal.App.3d 625 (*Lyons*), by focusing on the role of the trial court judge that referred the case to BHC, that distinction is not relevant to the question before us.

At oral argument, counsel for Villanueva focused on the fact that the People filed their section 170.6 peremptory challenge prior to her first appearance at BHC, where the proceedings are limited to a defendant signing release forms related to the screening process and setting a future date for the acceptance hearing. Despite focusing almost exclusively on the acceptance decision in the return to the petition, counsel asserted the issue in Villanueva's case is limited to whether the *screening* is a hearing on a contested issue as defined by section 170.6. Counsel conceded it gets "a little bit more concerning when we get to the second court appearance where they're making a decision about whether or not to accept the person," and, upon further questioning from the court, confirmed that Villanueva's position was that the section 170.6 petition should have been filed at the second hearing instead of the first. We see no reason to differentiate between the two hearings in the context of a timeliness analysis for a section 170.6 challenge.

In her written ruling, Judge Davis referred to these first two hearings collectively as the "screening and acceptance decision." The parties repeated this phrasing throughout the petition, return, and reply, referring generally to the "screening and acceptance process." This makes sense because, as the parties seem to agree, the purpose of the screening process is to provide information that may be relevant to the acceptance decision. Thus, a case is generally referred to BHC for screening *and* acceptance and, in that sense, the acceptance determination is pending upon the referral. We are aware of no authority suggesting there must be a final hearing date on calendar before a party is permitted to file a section 170.6 peremptory challenge. (See *Maas*, *supra*, 1 Cal.5th at p. 977 [oral hearing not required].) Rather, in our view, once a referral is made, the full screening *and* acceptance process is pending.

13

Regardless, even if we were to consider the initial screening hearing separately, the People note that the decision to screen a defendant is also discretionary and that, in at least one case, Judge Davis has declined to screen a defendant upon determining that they would not be a good fit for BHC. Again, although the full team weighs in, it appears that it is the BHC judge that ultimately makes the determination as to whether to proceed with screening. As noted, in the two cases at hand, the People have contested the referral and would almost certainly oppose both the initial decision to screen the defendant and the subsequent decision as to whether to accept the defendant into BHC. We see no practical or statutory basis to deny the parties the right to file a section 170.6 challenge at the initial screening hearing, only to allow the challenge at the very next hearing, which necessarily flows from the first.

Villanueva and Broadway assert, further, that the contested issue must be related to the merits of the case. In the ruling denying the challenge, Judge Davis likewise noted that "the screening and acceptance decision does not involve a determination on contested issues of fact or law *related to the merits of the case.*" (Italics added.) This language derives from section 170.6, subdivision (2), which clarifies that a party is not precluded from making a peremptory challenge against a judge who has, in the same case, previously presided over a pretrial conference or other proceeding that did not involve "a determination of contested fact issues relating to the merits." To the extent Judge Davis was referring to the fact that the merits of the criminal actions against Broadway and Villanueva had been resolved by the prior verdict or plea, caselaw makes clear that section 170.6 challenges do not turn on whether a defendant has already been tried and convicted at the time the case is assigned to a different judge for further proceedings.

14

When a defendant is referred for sentencing or resentencing (i.e., after a successful appeal) to a judge that is different from the judge that presided over the trial or plea, a section 170.6 peremptory challenge against the new judge may be timely and appropriate. (See, e.g., *Lyons, supra,* 73 Cal.App.3d at p. 628; accord *Depper v. Superior Court* (1999) 74 Cal.App.4th 15, 20 (*Depper*) ["continuation of proceedings theory is inapplicable, in any event, when a different judge presides at the hearing"].) Sentencing, including placing the defendant on formal probation, often requires the judge to resolve factual disputes, related to, for example, the determinate sentencing law or Penal Code sections 1203 and 1204. (*Lyons,* at p. 628.) "If upon remand a judge who had never previously participated in the case was assigned to the case, a party who had not yet exercised a section 170.6 challenge could exercise it against the new judge." (*Yokley v. Superior Court* (1980) 108 Cal.App.3d 622, 627.) Accordingly, whether the "merits of the case" have been adjudicated does not answer the question of whether the BHC judge is called upon to resolve questions of fact and is therefore subject to peremptory challenge.

Moreover, at its essence, BHC constitutes an extended sentencing proceeding, and as noted *ante*, when a new judge presides at sentencing, that judge is subject to challenge under section 170.6. (See *Lyons, supra*, 73 Cal.App.3d 625 at p. 628; accord *Depper, supra,* 74 Cal.App.4th at p. 20.) Specifically, beyond the initial screening decision, if the BHC judge decides to accept a defendant into the program, the BHC judge immediately sentences them to probation under the terms of the program.

In addition to sentencing a defendant to probation, BHC proceedings may involve probation violation proceedings if the BHC defendant does not comply with the terms of probation. A defendant may file a section 170.6

15

peremptory challenge to a judge that presides over a probation violation hearing, if that judge was not the same judge the presided over trial or sentencing. (See, e.g., *Depper, supra,* 74 Cal.App.4th at p. 21; *People v. Smith* (1961) 196 Cal.App.2d 854, 857.)

Also illustrative are cases involving habeas petitions. A party may file a section 170.6 peremptory challenge when a new judge is assigned to hear a habeas petition. (*Maas, supra*, 1 Cal.5th at p. 975.) As our high court explained in *Maas*, "A habeas corpus proceeding is not a criminal action. Rather, as relevant here, it is an independent, collateral challenge to an earlier, completed criminal prosecution." (*Ibid.*) The court concluded habeas corpus proceedings are "special proceeding[s]" within the meaning of section 170.6. (*Maas,* at p. 975.) "Accordingly, a habeas corpus petitioner who files a motion for disqualification in proper form and in compliance with the procedural requirements of section 170.6 has a right to disqualify the judge assigned to try, or hear any matter within, that habeas corpus proceeding." (*Maas,* at pp. 975−976.)

The *Maas* court also determined that the right to file a 170.6 petition attaches as soon as the petition is filed, and a judge is assigned. (*Maas, supra*, 1 Cal.5th at pp. 976−977.) The court explained, "a judge who decides whether a petition for writ of habeas corpus has stated a prima facie case for relief hears and resolves a contested issue of *law*, within the meaning of section 170.6, subdivision (a)(1), because the judge is called upon to decide questions of law presented by the petition." (*Maas,* at p. 977.) Accordingly, the court concluded a section 170.6 peremptory challenge is timely and appropriate at the preliminary stage, before the court has determined whether the petition has alleged a prima facie case for relief. (*Maas,* at pp. 982−983.) By analogy here, as we have just explained, the initial

screening and acceptance decision for BHC requires resolution of potentially contested issues of fact, and it is appropriate to allow a section 170.6 challenge *before* the court makes that determination.

As in the sentencing context, "[w]hen the judge assigned to examine and rule on the habeas corpus petition is the same judge who presided at the petitioner's criminal trial, 'there is no judge better suited for making a determination of the issues raised in [the] petitioner's petition' [citation], and the petitioner is not permitted at that point to mount a peremptory challenge under section 170.6. However, when the assigned judge had no involvement in the petitioner's criminal action, denying the petitioner the right to peremptorily challenge a judge he or she believes is prejudiced would be contrary to the intent and purpose of section 170.6." (*Maas, supra*, 1 Cal.5th at pp. 980−981.) Likewise, denying the People's right to peremptory challenge at the outset of the assignment of the case to BHC would be contrary to the intent of section 170.6.

Finally, a party can bring a peremptory challenge under section 170.6 when a case is assigned to a judge for all purposes. "[F]or a case assignment to be an all purpose assignment, two prerequisites must be met. First, the method of assigning cases must 'instantly pinpoint' the judge whom the parties can expect to ultimately preside at trial." (*Lavi, supra,* 4 Cal.4th at p. 1180.) "Second, that same judge must be expected to process the case 'in its totality' [citation], from the time of the assignment, thereby 'acquiring an expertise regarding the factual and legal issues involved, which will accelerate the legal process." (*Ibid*., fn. omitted.) Our high court has rejected the notion that the all-purpose assignment exception cannot occur in a criminal case. (*Lavi,* at p. 1178; see also *Bontilao v. Superior Court* (2019)

17

37 Cal.App.5th 980, 996 [applying the all-purpose assignment rule to petitions for habeas corpus].)

In the context of BHC, once the case is transferred for screening, the BHC judge is assigned for all purposes relevant to BHC. This would include, depending on how a specific case progresses, the decision to screen the defendant and the decision to admit the defendant into the program; an order sentencing the defendant to formal probation; a finding or refusal to find a violation of the terms of the probation order; a modification or termination of the probation order; and, in some cases, an order reducing or expunging the underlying criminal convictions. Thus, the BHC assignment is akin to an all-purpose assignment for a special proceeding, analogous to the proceedings that arise from a petition for habeas corpus.

Based on the foregoing, we conclude that BHC proceedings involve judicial decisions regarding potentially contested matters of fact, and therefore a timely section 170.6 peremptory challenge to the judge assigned to BHC must be granted. In reaching this conclusion, we do not seek to undermine the important role that collaborative courts, and BHC specifically, play in our criminal justice system. Rather, we acknowledge that it is equally imperative that we " 'preserve public confidence in the impartiality of the [collaborative] courts.' " (*Maas, supra*, 1 Cal.5th at p. 973.)

## III.  DISPOSITION

Let writs of mandate issue, directing the trial court to vacate its orders denying the People's peremptory challenges and enter new orders granting the People's peremptory challenges.


KELETY, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.

Filed 7/8/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>BROOKLYN BROADWAY,<br><br>    Real Party in Interest. | D085508<br><br><br><br><br>(Super. Ct. No. SCD301391) |
| THE PEOPLE,<br><br>    Petitioner,<br><br>    v.<br><br>THE SUPERIOR COURT OF SAN DIEGO COUNTY,<br><br>    Respondent;<br><br>ANA VILLANUEVA,<br><br>    Real Party in Interest. | D085509<br><br><br><br>(Super. Ct. Nos. SCS328569, SCD295417, SCN436065) |

THE COURT:

The opinion in this case filed June 25, 2025 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 81105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

IRION, Acting P. J.

cc: All Parties